IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. _____

SAS INSTITUTE INC.,            )
                               )
                  Plaintiff,   )
                               )
          v.                   )      **COMPLAINT**
                               )
AKIN GUMP STRAUSS HAUER &      )
FELD, LLP and MICHAEL L. KIKLIS, )
                               )
                  Defendants.  )

SAS Institute Inc., complaining of Akin Gump Strauss Hauer & Feld, LLP ("Akin Gump") and Michael L. Kiklis ("Mr. Kiklis"), alleges and says:

## INTRODUCTION

1. Akin Gump and Mr. Kiklis represented SAS regarding patent issues, obtained confidential client information from SAS, and then sued SAS for patent infringement in a case in which SAS' confidential information is directly relevant and can be used against SAS to the benefit of the plaintiff in that case. Because of Akin Gump's and Mr. Kiklis' breach of their fiduciary duties, SAS seeks to impose a constructive trust on the proceeds of their breach of duty or, in the alternative, to recover SAS' actual damages.

## PARTIES

2. SAS Institute Inc. ("SAS") is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business in Cary, North Carolina.

3. Upon information and belief Defendant Akin Gump Strauss Hauer & Feld, LLP is a limited liability partnership organized and existing under the laws of the State of Texas with its principal place of business in Dallas, Texas.

4. Upon information and belief, Defendant Michael L. Kiklis is a citizen and resident of the Commonwealth of Virginia and is an attorney licensed to practice in the State of Washington and the District of Columbia.

## JURISDICTION AND VENUE

5. The amount in controversy, exclusive of costs and interest, exceeds $75,000.00 and the plaintiff and defendants are of diverse citizenship. This Court therefore has jurisdiction pursuant to 28 U.S.C. § 1332.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## FACTS

7. SAS is a privately held software company that provides business analytics software and services to customers worldwide.

8. As a significant member of the software development industry, SAS frequently retains outside counsel for intellectual property matters.

9. Beginning in 2004, Mr. Kiklis approached Timothy K. Wilson ("Mr. Wilson"), Senior IP Counsel for SAS, to discuss potential representation, including patent prosecution work and negotiation of cross-licensing agreements. At the time, Mr. Kiklis was associated with Sonnenschein, Nath & Rosenthal, LLP.

10. Between 2004 and November, 2009, Mr. Kiklis stayed in regular contact with Mr. Wilson through telephone calls, meetings at conferences, face-to-face meetings, and email.

11. Upon information and belief, Mr. Kiklis joined Akin Gump's intellectual property section in January 2007. Since as early as August 2006, Akin Gump served as SAS' counsel regarding SAS' lobbying efforts and other government relations matters.

12. Mr. Kiklis continued to solicit intellectual property work from Mr. Wilson upon his arrival at Akin Gump.

13  On February 9, 2007, a company named Triton IP filed a patent infringement lawsuit against SAS. Akin Gump and Mr. Kiklis approached SAS to represent SAS in that case. While SAS ultimately retained another law firm for that case, Mr. Kiklis continued to solicit intellectual property work from SAS.

14. As he was soliciting work from SAS, Mr. Kiklis repeatedly emphasized his expertise in negotiating cross-licenses between large corporate entities, as well as his experience with patent litigation.

15. In April 2007, IBM requested that SAS cross-license its patent portfolio with IBM. SAS determined that outside counsel should be retained to assist in the valuation and negotiation of the cross-licensing agreement.

16. Mr. Wilson proposed to SAS management that the company hire Mr. Kilkis, because Mr. Kiklis had significant prior experience negotiating cross-licensing agreements and he had specific experience negotiating with IBM. SAS decided to retain Mr. Kiklis and Akin Gump.

17. On June 11, 2007, SAS received a written proposal from IBM. Mr. Wilson discussed IBM's proposal with Mr. Kiklis, and over the next few weeks Mr. Wilson and Mr. Kiklis had numerous conversations during which Mr. Wilson disclosed SAS' strategy for dealing with patent infringement and licensing matters.

18. While Mr. Kiklis offered to give specific advice regarding the June 11 proposal, Mr. Wilson expressed concern that SAS and Akin Gump had not executed a formal engagement letter concerning representation with respect to intellectual property matters. In response, Mr.

Kiklis told Mr. Wilson that SAS was already a client and that a separate agreement for the IBM cross-licensing work was unnecessary.

19.     SAS and Akin Gump ultimately formalized their relationship regarding the intellectual property work in a written engagement letter ("Engagement Letter").  A true and accurate copy of the Engagement Letter is attached as <u>Exhibit A</u> and incorporated by reference.

20.     The Engagement Letter contains several crucial terms, including the following:

> "Counsel is expected to conform to the <u>highest</u> ethical standards in performing services for Institute.  Before performing any billable services, Counsel is responsible for reviewing the scope of services in conjunction with Counsel's firm's records to determine whether there is a conflict of interest which would prevent Counsel or Counsel's firm from fully representing Institute in the above-captioned matter.  <u>Counsel must promptly notify the Managing Attorney of any potential conflict of interest which becomes apparent to Counsel</u> in Counsel's pre-engagement review of the matter, or <u>in the course of Counsel's engagement by Institute</u>…Such waivers must be in writing and signed by the General Counsel."

(emphasis added).

21.     The Engagement Letter also contemplates that Akin Gump and Mr. Kiklis could be engaged for litigation services if a lawsuit arose.

22.     On August 15, 2007, SAS was named in a patent infringement lawsuit brought by a company named Diagnostics Systems Corporation (DSC).

23.     Mr. Wilson sent a copy of the DSC complaint to Mr. Kiklis on August 17, 2007, and they discussed the company's internal approach to such lawsuits.

24.     While Mr. Wilson and Mr. Kiklis were discussing the DSC suit, Akin Gump was also representing a company named Juxtacomm.

25.     On August 17, 2007, Akin Gump and Mr. Kiklis filed a patent infringement suit on behalf of Juxtacomm in the United States District Court for the Eastern District of Texas, civil action number 2:07-CV-359. ("Juxtacomm I").

26. In August 2007, Mr. Kiklis told Mr. Wilson that he was about to file a big case in east Texas against the major players in the computer software industry, everyone except for SAS because SAS was his client. Mr. Kiklis told Mr. Wilson to keep his eyes on the press and he would see the case.

27. The IBM cross-licensing matter continued into 2008 with the ongoing exchange of licensing proposals. On March 14, 2008, Mr. Wilson emailed Mr. Kiklis a revised proposal from IBM, and they discussed the proposal and SAS' potential response in detail. In doing so, Mr. Kiklis also provided Mr. Wilson a proposal for Akin Gump to expand its involvement in the matter by performing additional work that might be needed in light of IBM's most recent proposal.

28. On August 22, 2008, Mr. Kiklis contacted Mr. Wilson to ask for more work from SAS. Mr. Wilson told Mr. Kiklis that the IBM matter was still not resolved and that Akin Gump's assistance would likely be needed again. As a result, neither SAS nor Akin Gump sought to close the matter or terminate the attorney-client relationship.

29. Because of the potential for post-closing issues in the IBM matter, the file between SAS and Akin Gump remained open and the attorney-client relationship continued in 2009. Neither Akin Gump nor SAS sought to terminate the attorney-client relationship.

30. On November 6, 2009, Mr. Kiklis emailed Mr. Wilson, seeking approval to close Akin Gump's file on the cross-licensing agreement negotiations. Mr. Kiklis did not inform SAS of any potential or existing conflicts of interest as required under the Engagement Letter. Mr. Wilson, not having been informed of any conflict of interest, consented to the file being closed.

31. That same day, Akin Gump and Mr. Kiklis filed a Joint Motion to Dismiss in Juxtacomm I, which effectively ended that case.

32. Two months later, on January 21, 2010, Akin Gump sued SAS for patent infringement on behalf of Juxtacomm in the Eastern District of Texas, civil action number 6:10-CV-11. ("Juxtacomm II").

33. The complaint in Juxtacomm II is nearly identical to the complaint in Juxtacomm I. In both complaints, Juxtacomm alleges that it is the exclusive licensee of Patent No. 6,195,662 for an alleged invention. In both complaints, Juxtacomm alleges that the acts of the defendants infringed on this patent. And in both complaints, Akin Gump and Mr. Kiklis included identical allegations of the acts that allegedly infringe on the patent. In Juxtacomm I, Akin Gump and Mr. Kiklis alleged:

> Each of the Defendants has infringed and continues to infringe the '662 Patent, either directly or by contributory infringement or inducement of others to infringe. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of products and/or services related to the transformation and exchange of data between computer systems. Each of the Defendants is liable for infringement of the '662 Patent pursuant to 35 U.S.C. § 271.

(Paragraph 26 of the Complaint and the Amended Complaint in Juxtacomm I)

While in Juxtacomm II, Akin Gump and Mr. Kiklis alleged:

> Upon information and belief, each of the Defendants has infringed and continues to infringe on the '662 Patent, either directly or by contributory infringement or by inducing infringement or by violating 35 U.S.C. § 271(f). The infringing acts include, but are not limited to, (i) making, using, selling, or offering for sale, (ii) importing into the United States, and (iii) supplying or causing to be supplied in or from the United States for use or combination abroad, products and/or services related to the transformation and exchange of data between computer systems. Each of the Defendants is liable for infringement of the '662 Patent pursuant to 35 U.S.C. § 271.

(Paragraph 25 of the Complaint in Juxtacomm II).

34. The only apparent difference between the two lawsuits is the defendants who are named. As Mr. Kiklis explained to Mr. Wilson, SAS was left off Juxtacomm I because SAS is an Akin Gump client. Akin Gump and Mr. Kiklis did, however, sue SAS in Juxtacomm II.

35. Upon information and belief, Mr. Kiklis had already advised Juxtacomm on the Juxtacomm II lawsuit when he asked Mr. Wilson to terminate Akin Gump's representation of SAS in the IBM cross-licensing matter.

36. Despite having obtained confidential client information regarding SAS' handling of patent infringement lawsuits, and despite having told Mr. Wilson that he did not name SAS in Juxtacomm I because SAS was his client, Mr. Kiklis appeared as counsel for plaintiff in both Juxtacomm I and Juxtacomm II, signing the complaints in both cases.

37. Counsel for SAS has communicated with and met with representatives of Akin Gump to discuss Akin Gump's and Mr. Kiklis' suit against SAS and to request that Akin Gump and Mr. Kiklis not proceed with the lawsuit in light of the obvious conflict of interest and use of confidential client information. However, Akin Gump and Mr. Kiklis have rebuffed SAS' requests and continue their litigation against SAS.

### FIRST CAUSE OF ACTION
**(Constructive Fraud)**

38. The allegations of paragraphs 1 through 37 set forth above are adopted and incorporated herein by reference.

39. As SAS' attorneys, Akin Gump and Mr. Kiklis held and continue to hold a position of trust and confidence with SAS.

40. Akin Gump and Mr. Kiklis owe fiduciary duties to SAS.

41. Akin Gump and Mr. Kiklis willfully and wantonly breached their fiduciary duties to SAS by, among other things:

(a) suing their own client;

(b) continuing a lawsuit against their own client despite SAS' repeated requests that they not proceed with the lawsuit in light of the obvious conflict of interest and use of confidential client information;

(c) using to SAS' detriment information that they obtained in confidence while they were fiduciaries of SAS; and

(d) failing to advise SAS of potential infringement that might be alleged against SAS by Juxtacomm.

42. Akin Gump and Mr. Kiklis benefited financially from their breaches of fiduciary duties.

43. The above-described actions of Akin Gump and Mr. Kiklis constitute constructive fraud for which SAS is entitled to have a constructive trust imposed on all proceeds of Akin Gump's and Mr. Kiklis' representation in Juxtacomm II.

44. As a direct and proximate result Akin Gump's and Mr. Kiklis' breach of fiduciary duty, SAS has suffered actual damages, in an amount to be determined at trial.

45. SAS is entitled to punitive damages as a result of Akin Gump's and Mr. Kiklis' intentional, fraudulent, wrongful, malicious, and egregious misconduct and their intentional disregard of and indifference to SAS' rights.

46. SAS is further entitled to doubling of its damages in accordance with N.C. Gen. Stat. § 84-13.

### SECOND CAUSE OF ACTION
**(Breach of Contract)**

47. The allegations of paragraphs 1 through 46 set forth above are adopted and incorporated herein by reference.

48. Akin Gump entered into a contract with SAS to provide legal services to SAS and act as SAS' attorneys.

49. Akin Gump has breached the terms of the contract by, among other things:

   (a) failing to conform to the highest ethical standards;

   (b) failing to inform SAS of conflicts of interest;

   (c) failing to advise SAS of potential infringement that might be alleged against SAS by Juxtacomm;

   (d) failing to obtain a written waiver of the conflict of interest; and

   (e) breaching the implied term of good faith and fair dealing.

50. As a direct and proximate result Akin Gump's breach of contract, SAS has suffered actual damages, in an amount to be determined at trial.

WHEREFORE, Plaintiff SAS Institute Inc. prays:

1. That the Court impose a constructive trust on all proceeds of Akin Gump's and Mr. Kiklis' representation of Juxtacomm in the Juxtacomm II case.

2. That Plaintiff have and recover of Akin Gump and Mr. Kiklis, jointly and severally, its actual damages suffered as a result of Akin Gump's and Mr. Kiklis' constructive fraud and breach of contract, plus pre-judgment and post-judgment interest;

3. That Plaintiff have and recover punitive damages against Akin Gump and Mr. Kiklis;

4. That Plaintiff's damages be doubled pursuant to N.C. Gen. Stat. § 84-13;

5. That Akin Gump and Mr. Kiklis be taxed with the costs of this action, including reasonable attorneys' fees and costs; and

6. That the Court grant the Plaintiff such other relief as it deems just and proper.

Respectfully submitted, this the 17th day of March, 2010.

>WILLIAMS MULLEN
>
>By: /s/ Camden R. Webb
>Camden R. Webb
>N.C. State Bar No. 22374
>Attorneys for Plaintiff
>301 Fayetteville Street
>Suite 1700
>Raleigh, NC 27601
>Telephone: (919) 981-4000