IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:10-CV-101-H

SAS INSTITUTE INC.,

    Plaintiff,

v.

**ORDER**

AKIN GUMP STRAUSS HAUER &
FELD, LLP and MICHAEL L.
KIKLIS,

    Defendants.

This matter is before the court on defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiff has responded, and defendants have replied. This matter is ripe for adjudication.

## FACTUAL ALLEGATIONS

In 2004, defendant Michael L. Kiklis ("Kiklis") approached Timothy K. Wilson ("Wilson"), Senior IP Counsel for SAS, to discuss Mr. Kiklis' potential representation of SAS in intellectual property matters. In January 2007, Kiklis became a partner in defendant Akin Gump Strauss Hauer & Feld's ("Akin Gump") intellectual property practice group. Once Kiklis joined Akin Gump, he again discussed potentially representing SAS with Wilson. In April 2007, SAS was approached by IBM regarding the

possibility of entering into a cross-licensing agreement. Wilson proposed to SAS management that the company hire Kiklis and Akin Gump to negotiate the cross-licensing agreement with IBM. SAS retained defendants for this cross-licensing matter and formalized their relationship in an Engagement Letter dated September 10, 2007. (Compl, Ex. A.)

Prior to the engagement letter, on August 17, 2007, Kiklis and Akin Gump filed a patent infringement suit on behalf of JuxtaComm Technologies, Inc. in the United States District Court for the Eastern District of Texas ("JuxtaComm I"). SAS alleges that Kiklis advised Wilson about the lawsuit before it was filed and SAS further alleges Kiklis told Wilson that SAS would not be sued in this suit because it was an Akin Gump client.

Plaintiff also alleges that as early as June of 2007 an attorney-client relationship was established between SAS and Kiklis. When SAS received a written proposal from IBM on June 11, 2007, Wilson discussed the proposal with Kiklis. When Kiklis offered to give Wilson specific advice on the proposal, Wilson hesitated because a formal engagement letter had not been signed. Kiklis told Wilson that SAS was already a client. Over the next several weeks, Kiklis and Wilson discussed a number of legal issues regarding SAS's response to IBM's request for a cross-licensing agreement, and as part of those conversations, Wilson revealed to Kiklas SAS's strategy for responding to

2

allegations of patent infringement. Also, in August 2007, when SAS was named as a defendant in a patent infringement lawsuit filed by Diagnostic Systems Corporation, Wilson sent Kiklis a copy of the complaint in that case and discussed the company's approach to such suits.

Plaintiff notes that the Engagement Letter, among other things, obligated defendants to "conform to the highest ethical standards" and to promptly notify SAS of any actual or potential conflict of interest. (Compl., Ex. A.) At no time did defendants either notify SAS of any conflict of interest or obtain a written waiver of any such conflict.

On November 6, 2009, Kiklis emailed Wilson, stating "I haven't heard from you in quite some time about this matter. I would therefore like to close it out. Would that be okay?" Wilson replies "Yes." (Exhibit 1 to Def's Mem. Supp. Mot. Dismiss.)

That same day, November 6, 2009, Kiklis joined in a joint motion to dismiss Juxtacomm I, terminating the suit in which SAS had not been named a defendant due to its status as an Akin Gump client. At that time, he did not inform SAS of any potential conflicts of interest.

On January 21, 2010, Akin Gump on behalf of JuxtaComm-Texas Software, LLC sued SAS for patent infringement in the Eastern District of Texas ("Juxtacomm II"). SAS contends the complaint

3

in Juxtacomm II is nearly identical to the complaint in Juxtacomm I other than the identity of the defendants who are named. SAS contends that by prosecuting a claim against SAS for patent infringement, defendants have created a situation in which SAS's confidential client information about its strategy for defense of patent infringement allegations will necessarily be used against it.

## COURT'S DISCUSSION

### I. Standard of Review

A federal district court confronted with a motion to dismiss for failure to state a claim should view the allegations of the complaint in the light most favorable to the plaintiff. See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). The intent of Rule 12(b)(6) is to test the sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion "'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Id. (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007). "[A] complaint need not 'make a case' against a defendant or 'forecast evidence sufficient to prove an element' of the

4

claim." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).

## II. Constructive Fraud Claim

To prevail on a claim of constructive fraud, plaintiff must show the existence of facts and circumstances "(1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." Rhodes v. Jones, 232 N.C. 547, 549 (1950). A claim of constructive fraud does not require the same rigorous adherence to elements as actual fraud. Terry v. Terry, 302 N.C. 77, 83 (1981).

Defendants argue that plaintiff SAS has not properly stated a clam for constructive fraud. Arguing that SAS only alleges that defendants "benefited financially from their breach of fiduciary duty[,]" (Compl. ¶ 42), defendants contend the complaint is silent on what type of financial benefits defendants received, and the complaint fails to identify the person or entity from whom a benefit was received.

SAS counters defendants' argument, contending that it does not allege that defendants benefited from their actions by receiving a fee from SAS, but rather SAS alleges that defendants

5

benefited by receiving a fee from another client, Juxtacomm, through its breach of fiduciary duty to SAS.

SAS argues, and this court agrees, that it has properly pled a claim for constructive fraud by alleging that: (1) an attorney-client relationship existed between SAS and defendants; (2) defendants obtained confidential information pursuant to that relationship relating to SAS's strategy for defending against allegations of patent infringement; and (3) despite having obtained confidential information that was directly relevant and could be used against SAS, defendants brought a patent infringement lawsuit against SAS (using the confidential information) on behalf of another client, Juxtacomm, alleging that SAS infringed Juxtacomm's patent. (Compl. ¶¶ 17, 19, 36.) SAS notes that the benefit defendants received is the fee defendants receive from Juxtacomm for suing SAS.

This court finds that SAS has sufficiently pled a claim for constructive fraud. Whether SAS can prove a claim for constructive fraud is not for the court to decide at this stage of the litigation. Defendants' motion to dismiss is DENIED as to the claim for constructive fraud.

### III. Breach of Contract Claim

Defendant argues that plaintiff's breach of contract claim must be dismissed because there was not a valid contract between plaintiff and defendants at the time plaintiff claims the

6

alleged breach occurred. In short, defendants argue that because Juxtacomm II was filed in 2010, after the November 2009 email in which the parties agreed to terminate the attorney-client relationship, there was no contract at the time of the alleged incident constituting breach and therefore the claim must be dismissed. SAS argues that this view misinterprets its contract claim and the contract itself, contending that defendants breached the contract well before Juxtacomm II was filed by failing to inform SAS of an actual or potential conflict of interest. SAS argues that on November 6, 2009, defendants knew they would sue SAS on behalf of Juxtacomm, evidenced by the motion to dismiss Juxtacomm I on the very same day.

Additionally, SAS contends that defendants were under a duty of confidentiality that survived any alleged contract termination. SAS alleges that defendants obtained confidential client information about SAS's defense of patent infringement matters and that defendants are presently using that confidential client information to profit by suing SAS.

Plaintiff has sufficiently alleged a breach of contract claim. Therefore, defendants' motion to dismiss is DENIED as to the breach of contract claim.

7

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is DENIED.

This 22ᶰᵈ day of March 2011.

/s/ Malcolm J. Howard
Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#26