UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO: 5:10-CV-101-H

| | |
|---|---|
| SAS INSTITUTE INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| AKIN GUMP STRAUSS HAUER & FELD, ) | |
| LLP, and MICHAEL L. KIKLIS, ) | |
| ) | |
| Defendants. ) | |

This cause comes before the Court upon a motion by Plaintiff SAS Institute, Inc. ("SAS") to compel documents and information responsive to its first set of requests for production of documents and interrogatories. (DE-59). SAS certifies it has made a good faith effort to resolve the discovery dispute and seeks reasonable expenses, including attorneys' fees, for pursuing the motion. Defendants have responded (DE-68) and the matter is therefore ripe for adjudication. For the reasons stated herein, the motion to compel (DE-59) is granted in part and denied in part.

I. **BACKGROUND**

SAS alleges the following facts in its complaint: In April 2007, non-party IBM approached SAS regarding the possibility of entering into a cross-licensing agreement. (DE-1, ¶ 15). SAS retained Defendants for this cross-licensing matter. (*Id.* at ¶¶ 15, 16). Defendant Kiklis subsequently had a number of conversations with Tim Wilson, Senior IP Counsel for SAS, regarding the IBM cross-licensing agreement, as well as a separate patent infringement lawsuit filed against SAS by a company named Diagnostic Systems Corporation. In those conversations,

Mr. Wilson revealed SAS's strategy for responding to allegations of patent infringement. (*Id.* at ¶ 17).

During this same time period, Defendants represented non-party JuxtaComm. On August 17, 2007, Defendants filed a patent infringement suit on behalf of JuxtaComm in the United States District Court for the Eastern District of Texas ("*JuxtaComm I*"). (Compl. ¶ 25). SAS was not named as a defendant in that suit. However, on January 21, 2010, Defendants filed a suit against SAS for patent infringement on behalf of JuxtaComm ("*JuxtaComm II*"). SAS asserts that the allegations in JuxtaComm I and JuxtaComm II "appear to be identical." (DE-33, p. 3).

SAS requested that Defendants withdraw from their representation of JuxtaComm, but Defendants refused. Thereafter, SAS moved to disqualify Defendants as counsel in *JuxtaComm II*. (DE-68-1). The district court for the Eastern District of Texas denied SAS's motion to disqualify on November 29, 2010. (*Id.*).

SAS filed the instant action on March 17, 2010, alleging constructive fraud and breach of contract. (DE-1). SAS asserts that Defendants "obtained confidential client information from SAS and then sued SAS for patent infringement in a case in which SAS' confidential information is directly relevant and can be used against SAS." (DE-1, p. 1). This Court denied Defendants' motion to dismiss SAS's complaint on March 22, 2011. (DE-26). Defendants answered SAS's complaint on April 5, 2011 (DE-28) and discovery commenced in the case.

SAS served Defendants its "First Request for Production of Documents" and "First Set of Interrogatories" on June 1, 2011. (DE-59-1, DE-59-2). Defendants served their objections and responses on August 2, 2011. (DE-59-3, DE-59-4). Specifically, Defendants objected and declined to provide responses to interrogatories 3, 5, and 8-12, as well as documents responsive

to requests 17, 21-23, 27-30, 33-36 and 41. The parties have since been unable to resolve the discovery dispute. SAS now seeks to compel these responses and documents and requests reasonable expenses, including attorneys' fees, involved in bringing the motion.

## II.     LEGAL BACKGROUND

Federal Rule of Civil Procedure 26(b)(1) states in relevant part, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." The standard for relevance during the discovery phase differs from the standard employed at trial. In order to be relevant, the information "need not be admissible at the trial" but only "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). During discovery, relevance is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund. Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)); *see also* Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (stating that discovery under the Federal Rules "is broad in scope and freely permitted"). "Over the course of more than four decades, district judges and magistrate judges in the Fourth Circuit . . . have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 243 (M.D.N.C. 2010) (collecting cases). "At the same time, 'discovery, like all matters of procedure, has ultimate and necessary boundaries.'" Oppenheimer Fund, Inc., 437 U.S. at 351 (quoting Hickman, 329 U.S. at 507). Thus, "[d]iscovery of matter not 'reasonably calculated to lead to the discovery of

3

admissible evidence' is not within the scope of Rule 26 (b)(1)." *Id.* at 351-52 (quoting Fed. R. Civ. P. 26(b)(1)).

Federal Rule of Civil Procedure 33 governs interrogatories. It states that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). All objections must be stated with specificity, and any objection not raised is waived. Fed. R. Civ. P. 33(b)(4). Motions to compel responses to interrogatories and requests for production are governed by Federal Rule of Civil Procedure 37(a)(3)(B), which provides that if a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, designation, production, or inspection."

Here, Defendants object to much of the discovery on the grounds of attorney-client privilege. The attorney-client privilege applies only if:

> the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Grand Jury Subpoena: Under Seal, 415 F.3d 333, 339 n.3 (4th Cir. 2005) (citing United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982)). "Typically, the attorney-client privilege does not extend to billing records and expense reports." Chaudhry v. Gallerizzo, 174 F.3d 394, 402 (4th Cir. 1999) (citing In re Grand Jury Proceedings, 33 F.3d 342, 353-54 (4th Cir. 1994)). However, if the billing statements reveal specific research or litigation strategy, they constitute

4

privileged communications and should not be disclosed. *Id.* "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." Jones, 696 F.2d at 1072.

With these legal precepts in mind, the undersigned considers the instant motion to compel.

### III. ANALYSIS

SAS seeks an order compelling Defendants to (1) answer Interrogatory Nos. 3, 5, and 8-12; and (2) respond to Document Request Nos. 17, 21-23, 27-30, 33-36, and 41.

Defendants resist discovery on several bases. First, Defendants contend much of the discovery improperly seeks privileged and confidential information regarding Defendants' representation of JuxtaComm and should be rejected by this Court as beyond the scope of discovery and irrelevant to the claims and defenses of the present case. According to Defendants, these discovery requests represent SAS's attempt to obtain "back door" discovery of the pending patent litigation in *JuxtaComm II* in the Eastern District of Texas. Defendants emphasize that, in its order denying SAS's motion to disqualify Defendants in *JuxtaComm II*, the district court in Texas expressly considered and rejected many of the factual allegations underlying SAS's present claims against Defendants. Thus, "[b]ecause of the limited nature of Defendants' representation of SAS, because another court has already reviewed and rejected the factual allegations of SAS's claims in this suit, and because the expansive discovery sought will change neither of these case-determinative facts, the Court should deny SAS's request to compel this expansive discovery as oppressive, harassing, and unduly burdensome." (DE-68, p.5). Similarly, Defendants contend SAS's attempts to gain discovery of Akin Gump's internal communications should be rejected as oppressive, harassing, unduly burdensome, privileged and irrelevant. Defendants further object to discovery of Defendant Kiklis's employment terms,

5

compensation, and representation of other clients. Defendants state they have already produced billing records and retainer letters and contend that further discovery would improperly delve into Kiklis's personal information, as well as the privileged and irrelevant information of other clients.

SAS responds that the discovery sought is narrowly tailored and directly relevant to its claims for breach of contract and constructive fraud. Moreover, contends SAS, neither attorney-client privilege nor work-product privilege prevents disclosure. Even if a privilege applies, SAS asserts it has demonstrated a substantial need justifying the disclosure.

Before considering the parties' contentions in conjunction with the specific discovery requests, it must be noted that in their arguments, Defendants rely heavily upon the factual findings and credibility determinations made by Judge Leonard Davis at the district court in Texas in his decision denying SAS's motion to disqualify. Judge Davis, however, is tasked with overseeing the litigation in *JuxtaComm II*--a matter completely separate and distinct from the case presented to this Court. And while Defendants do not suggest otherwise, they repeatedly rely upon "facts" not yet established in the present case to support their discovery arguments. For example, Defendants contend their representation of SAS was "extremely limited" and no conflict of interest between SAS and JuxtaComm ever existed. Although this may very well prove to be the case and although Defendants may have established these facts to Judge Davis's satisfaction, these facts are not yet proved here. At this early stage of litigation, the Court must accept SAS's factual allegations as true, *see* Edwards, 178 F.3d at 243, and Defendants' motion to dismiss has been denied. Thus, with all due respect to Judge Davis, the undersigned will not

6

consider the decision of the district court in Texas, nor arguments premised upon such decision. The individual discovery arguments are now considered and discussed in turn below.

### A. Interrogatories

**Interrogatory No. 3**: "State the date on which you identified SAS as an adverse or potentially adverse party to JuxtaComm regarding the '662 Patent."  (DE-59-4, p. 4).

In addition to their general objections, Defendants specifically objected to Interrogatory No. 3 on the grounds that the terms "you," "identified," "adverse," and "potentially adverse party" are vague and ambiguous.  Defendants further asserted that the information requested is protected by attorney-client privilege, represents attorney work product, is protected by "the consulting privilege, or other privileges," and is "confidential or proprietary information" not subject to discovery. (DE-59-4, p.4).  In their response to the motion to compel, Defendants argue the information sought is part of their representation of JuxtaComm and is therefore privileged. (DE-68, p.5).

However, Interrogatory No. 3 seeks nothing more than a date.  Clearly, at some point in time prior to filing the patent infringement litigation against SAS on behalf of JuxtaComm, Defendants identified SAS as a potential infringer of JuxtaComm's patent.  By its Interrogatory No. 3, SAS seeks to know on what date such identification took place.  The date is obviously highly relevant to SAS's conflict of interest claims.  Contrary to Defendants' assertions, Interrogatory No. 3 is neither vague nor oppressive, nor does it seek to elicit substantive information protected by privilege.  As Defendants have not sustained their burden of demonstrating why discovery should not occur, the motion to compel a response to Interrogatory No. 3 is granted.

**Interrogatory Nos. 5, 8-11**

These interrogatories seek the identification of witnesses who have potentially discoverable information. For example, Interrogatory No. 5 states: "For each person identified in your answer to Interrogatory No. 4, state that person's role in any analysis and/or evaluation of any actual or potential conflict of interest between SAS and JuxtaComm." (DE-59-4, p.5). Although Defendants responded to Interrogatory No. 4 and identified persons, they declined to respond to Interrogatory No. 5 because they assert it seeks privileged information. However, Interrogatory No. 5 does not seek substantive communications or attorney opinion or analysis. Rather, it seeks to discover which of the persons named by Defendants would likely have the most useful and relevant information regarding SAS's claims. Similarly, Interrogatory No. 8 asks: "For each person identified in your answer to Interrogatory Nos. 6 and 7, state that person's role in working on the JuxtaComm or the SAS matters." Defendants responded to Interrogatory No. 8 with respect to persons working on "SAS matters" but not with regard to JuxtaComm. But it is the alleged joint representation of both SAS and JuxtaComm and the inherent conflict of interest that forms the core of the present case. Defendants have failed to persuasively explain how the mere identification of a witness and that witness's role implicates privileged or work product information, particularly in a conflict of interest case where Defendants stand accused of unethical practices. *Accord* In re Doe, 662 F.2d 1073, 1079-80 (4th Cir. 1981) (recognizing a fraud exception to discovery of opinion work product and noting that "[t]he work product rule . . . was not designed as a fringe benefit for protecting lawyers who would, for their personal advantage, abuse it"). The motion to compel responses to Interrogatory Nos. 5, 8-11 is granted.

8

**Interrogatory No. 12**: "State the date on which you advised SAS of any potential conflict of interest between SAS and JuxtaComm and described how you advised SAS."

Defendants objected to this interrogatory as "argumentative and assuming facts not in evidence." The undersigned agrees the interrogatory is worded as a "gotcha" question. Defendants responded by stating that "[t]here was no nor has there ever been a conflict of interest between the parties as previously adjudicated and determined by the Court in *JuxtaComm-Texas Software, LLC v. Axway, Inc., et al*; Civil Action No. 6:10-cv-00011-LED at Docket No. 405." (DE-59-4, p.9). Thus, Defendants have responded to Interrogatory No. 12. To the extent SAS believes Defendants did or did not advise them of any potential conflict of interest, SAS has equal access to such information. The motion to compel any further response to Interrogatory No. 12 is denied.

### B. Document Requests

SAS seeks responses to Request for Production Nos. 17, 21-23, 27-30, 33-36, and 41, now addressed in turn.

**Request No. 17**: "The data from Akin Gump's client intake system for JuxtaComm for legal services relating to the '662 patent."

Defendants objected to this discovery on the basis of attorney-client privilege and work product. As a general matter, "the attorney-client privilege does not extend to billing records and expense reports." Chaudhry, 174 F.3d at 402. "'However, correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege.'" *Id.* (quoting Clarke v. American Commerce National

9

Bank, 974 F.2d 127, 129 (9th Cir. 1992)). Defendants state that "subject to a mutually agreeable protective order, [they] are amenable to producing redacted copies of bills for JuxtaComm I." (DE-68, p.6, n.9). This Court has since entered a protective order substantively similar to the one proposed by Defendants (DE-81), and therefore presumes Defendants will produce redacted copies of its bills for *JuxtaComm I*. Redaction of the client intake data would be appropriate if the records reveal "specific research or litigation strategy." *Id.* However, if the client intake data reveal no more than the "identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed," such information is not protected from disclosure. *Id.* Thus, the motion to compel production for Request No. 17 is granted to the extent the client intake information reveals no more than the mechanics of Defendants' representation of JuxtaComm. Substantive information, should it exist, may properly be redacted from the client intake data before disclosure of the remainder.

**Request Nos. 21-23, 35, 41**

These requests generally seek internal documents and communications regarding Defendants' work and investigation into the JuxtaComm patent litigation. For example, Request No. 21 seeks production of "[a]ny document in which SAS was identified as an infringer or potential infringer of the '662 Patent," while Request No. 35 asks for "[a]ny memoranda or other document that analyzes an actual or potential conflict between JuxtaComm and SAS regarding the '662 Patent."

While such requests are overly broad and improperly seek substantive information plainly protected by attorney-client privilege and the attorney work product doctrine, to the extent such documents exist, Defendants are ordered to list them on a privilege log in accordance with Rule

10

26(b)(5)(A) of the Federal Rules of Civil Procedure.  The motion to compel Request for Production Nos. 21-23, 35, and 41 is therefore granted in part and denied in part.

**Request No. 27**: "Emails and other internal Akin Gump written communications that relate to Mr. Kiklis' email to Mr. Wilson on November 6, 2009.  This includes any emails/written communications that preceded Mr. Kiklis' email and any emails/written communications that discussed whether Mr. Kiklis would ask Mr. Wilson to close the file."

Although this request seeks internal communications, the request is limited to specific communications that relate to a single event--Mr. Kiklis' email to Mr. Wilson on November 6, 2009.  Moreover, the requested communications are internal to Defendants only and thus do not implicate attorney-client or work product privilege.  The information sought is also relevant to SAS's claims.  The motion to compel Request for Production No. 27 is therefore granted.

**Request Nos. 28 and 29**

These requests seek "[a]ny document that reflects Mr. Kiklis' terms of employment with Akin Gump" and "[a]ny document that reflects the terms of Mr. Kiklis' compensation for the calendar years 2007, 2008, 2009, and 2010," respectively.

Although Defendants contend Mr. Kiklis' terms of employment and compensation are not relevant to the instant litigation, such information may be relevant to show motive or intent on the part of Mr. Kiklis.  The motion to compel Request for Production Nos. 28 and 29 is therefore granted.

**Request No. 30**: "Mr. Kiklis' daily time sheets for the calendar years 2007, 2008, 2009, and 2010.  This request includes Mr. Kiklis' daily time sheets, whether kept in paper or electronic form."

This request is only relevant insofar as the time sheets reflect work performed on behalf of either SAS or JuxtaComm. SAS has no right to discover the identity or work performed on behalf of Mr. Kiklis' other clients. The motion to compel is therefore granted to the extent the time sheets reflect work performed by Mr. Kiklis on behalf of SAS or JuxtaComm. Any work performed on behalf of other clients during this time period should be redacted.

**Request Nos. 33, 34**

These requests seek to discover "[i]nvoices sent to JuxtaComm regarding the work Akin Gump performed relating to the '662 Patent" as well as "[a]ll 'pre-bills,' 'pro formas,' or drafts of bills that Akin Gump produced regarding its work for JuxtaComm relating to the '662 Patent. This request includes any such documents that contain handwritten comments, mark-ups, etc."

As discussed *supra* in Request for Production No. 17, billing statements are generally not protected by attorney-client or work product privilege. The motion to compel Request for Production Nos. 33 and 34 is therefore granted. However, if any of the requested invoices contain substantive information beyond the mechanics of Defendants' representation of JuxtaComm, such information may properly be redacted before disclosure.

**Request No. 36**: "Any spreadsheets, charts, or other compilations of information maintained for client development or marketing purposes in which SAS is identified as a potential client of Akin Gump or as a client to which additional legal services could be offered."

Defendants argue this request is overly broad because it is not restricted to a particular time frame and "would require Defendants to search through potentially thirty years of records." (DE-68, p.9). SAS contends the "discovery is inherently limited to the time period when Defendants represented Juxta[C]omm and/or SAS, and when Defendants identified infringers of

12

the '662 patent" which would "be no more than four years, from approximately 2007 to the present." (DE-60, p.9). Given this time restriction, the motion to compel Request No. 36 is granted. Defendants will respond to the extent such materials were generated between January 2007 and the present.

## IV. CONCLUSION

For the foregoing reasons, SAS's motion to compel (DE-59) is GRANTED in part and DENIED in part. Given the varying levels of merit of SAS's arguments, the undersigned will neither award attorneys' fees nor impose sanctions.

DONE AND ORDERED in Chambers at Raleigh, North Carolina this 20th day of December, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE